No 271.—JONAS ROBESON *v.* JOSEPH HOWELL.

In an action of boundary of town lots, if it be shown by survey and plats of the town that. certain squares have been laid out, marked and surveyed, starting from a given point with a fixed dimension in each square, and if it be shown further that certain contiguous. squares have been subsequently laid off which touch and appear to run into the squares. or lots first laid out, then the lots or squares last laid out, surveyed and marked must stop at the boundary line of the older surveys. And if any diminution of quantity occurs in the measurement of the lots or surveys it must be borne exclusively by those holding under the surveys last made.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee,* J. *Nutt & Leonard,* for plaintiff and appellant. *Looney & Wells,* for defendant and appellee.

TALIAFERRO, J. This case is before us for the third time, having been twice remanded to enable the parties to obtain additional evidence. It has been tried before the district court three times, the decision on the first trial being in favor of the plaintiff, and on the subsequent trials judgments were rendered in favor of the defendant. A large amount of evidence is in the record. The testimony of several surveyors, all of whom it appears are competent men in their line of business, and conversant with the plan of the city of Shreveport and the method used in laying out its squares and lots. Most of them have held the office of city surveyor, and one of them is now occupying that position. These men have been commissioned from time to time to make surveys in Shreveport, to determine controversies that have heretofore arisen there in regard to boundaries. They seem to have taken great pains to be accurate in their measurements and calculations in regard to the lines necessary to be ascertained and traced, in order to determine the proper limits of the lots of ground of the litigants, forming the subject of this lawsuit. They have testified orally in regard to their surveys, and the City Surveyor presents in connection with his evidence a diagram of his survey. Documentary evidence in abundance is also presented. An act of partition, notarial deeds, judicial sales as muniments of title are introduced. These are valuable auxiliaries in aid of the inquiry, as they indicate the localities of the contiguous lots of ground, if they do not accurately express their boundaries, and they show the quantity of ground the contestants. bought and the periods of time at which they became owners.

With all this array of facts derived from the sources from which they have been obtained, it would seem at the first view that there could be no difficulty in adjusting the boundaries and settling the controversy between the parties. But an examination of the record with all the care we have been able to bestow upon it, admonishes us that there are difficulties in the way, for we find there are important discrepancies in the surveys of the experts from whom was mainly to be expected the data necessary to a clear and satisfactory view of the

case. The judge of the lower court, in a long and elaborate decree which he rendered in the case, points out these discrepancies and remarks:

"It seems to have been the fashion with all subsequent city survey-ors to ignore the work of their predecessors." * * * "All proceed more or less upon theory, regardless of what had previously been done. Each new measurement differing in some degree from the former, makes the lines and courses more unsettled, and the oftener the town is measured the greater will be the uncertainty as to boundaries."

Such then is the condition of things that some degree of uncertainty may be feared in any conclusion that can be arrived at; still we think the case may be determined without prejudice to the rights of the parties, notwithstanding the obscurity and contradiction which per-vade the testimony. The controversy has existed for more than ten years, and we deem it proper that it should be terminated.

The judgment of the court a qua was adverse to the plaintiff, and he has appealed.

The map or diagram presented in connection with his report by the City Surveyor is part of the record, and is marked H. In rendering his judgment the judge a quo used this map, and we shall also refer to it in the remarks we may have occasion to make in regard to lines and boundaries.

The plaintiff owns block No. 9. This block is bounded by Common street, Lake street, Louisiana street and fractional ten acre lot No. 9, owned by the defendant. The contest arises from an alleged conflic-tion of the limits of these two lots of ground; the line claimed by the defendant as the true boundary, cutting off, as the plaintiff complains, from block No. 9, a strip of ground by which the area of that block would be materially reduced. At the point K, in the blue line K C, is a rock planted in the ground. This rock the defendant contends was placed at that point in 1843 by Hall, a surveyor, who ran off the "ten acre lots," and that this rock indicates the point of intersection of ten acre lots six and seven, and fractional ten acre lots eight and nine. The plaintiff contends that the line B E forms the boundary between the lands of himself and the defendant, and not the line K C, as held by defendant. The judge a quo arrived at the conclusion that the evi-dence establishes that Hall planted the rock in its present position when he made the survey of the ten acre lots in 1843, and that it is the enduring monument indicating the point of intersection just mentioned. There are some facts shown that seem to favor that conclusion, and there are others that do not. The Shreveport Company, it seems, in 1843 had its lands not previously laid out in blocks and lots divided in parcels of ten acres each. Some of these lots were necessarily frac-tional. This work was performed it appears by Hall. But Shreveport

had been laid off as a town anterior to that time. The block No. 9, belonging to the plaintiff, had its locality fixed as a block within the town limits before Hall was called upon to lay off the ten acre lots. The dimensions of each block were fixed, to wit: three hundred and twenty feet square. Block No. 9 has well defined boundaries on three sides, as we have seen. It is not shown to have been fractional or its area less than that of the others. The width of the streets and the dimensions of the blocks are known.. It is not easy to see how Hall could, after the company had laid off blocks and sold them, run off the outside lands into ten acre lots to interfere with the survey of lots previously made. That Hall did plant the rock at the point K as a land mark for any purpose, we think there may be reasonable doubt. Parsons and Watts, old and experienced surveyors, do not by any means concur in the opinion on the subject. The latter made surveys in Shreveport in 1851; the former in 1854. Watts is clear that the rock was planted by Hall as the common corner of lots six, seven, eight and nine, as the witness (Watts) verified the lines by using Hall's field notes and his courses and distances. Parsons on the other hand, in conjunction with Rafteny, another surveyor, had the field notes and map of Hall when they made a general survey of Shreveport in 1854. Again, in 1860 these surveyors found the monument somewhere about the corner of ten acre lots six and seven and fractional lots eight and nine, and Parsons says: "We had no evidence that Hall put it there. Had we been so satisfied we would have established it."

The testimony of the present City Surveyor tends, we think, to weaken the belief that the rock monument was planted at the point K to indicate the intersection of the corners of the lots six, seven, eight and nine. By Hall's map, taken from book D, the line dividing fractional sections eight and nine and that dividing sections six and seven, do not come together at the same point to form a common corner for all four of these lots. By Hall's map, Howell's fractional lots Nos. 8 and 9 call for fifteen acres and one hundred and twenty perches; the lines claimed by him are shown to embrace sixty-four perches more than that quantity, while he bought, as his deeds show, only fourteen acres. These facts are adverse to the opinion that the rock planted at the point K marks the proper corner as contended of the four sections referred to, and rather tend to produce the impression that if planted there for that purpose it was so done in error. The blue line K C passing through the point K cuts off from the plaintiff's block a strip as it seems of about the width of twenty-seven feet, and runs at an angle into the blocks lying in the same tier with that of the plaintiff; whereas the line dividing ten acre lots six and seven passing through the point B, and extended would coincide with the line forming the sides of blocks nine, ten, twenty-seven, etc. This would, as

it seems to us, preserve the area and symmetry of form originally given to the blocks when the city was laid off.

It must be borne in mind that the blocks, of which the plaintiff is owner of the one numbered nine, were lots of ground laid off and having their appropriate areas and dimensions fixed several years before the division of the lands adjacent to and outside of the limits of the town as originally laid off. Many of these blocks were doubtless sold and in possession of third owners before the survey of the outside lands by Hall in 1843. The limits of the town were certainly not intended to be encroached upon by this later survey of the ten acre lots. The purchasers of blocks or lots within these limits are entitled to the quantities of ground they contain. We do not concur with the judge *a quo* that as between the litigants in this case they must be considered as having purchased *per aversionem.* For aught that appears, a proper adjustment of boundary between them may be made without taking from either his proper quantity. On this basis we believe from all that is in evidence before us the boundary may be established, and if there be a deficiency in quantity it must be sustained by the defendant.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered that the original dimensions and area of the block No. 9, owned by the plaintiff, be maintained by giving to each of its sides the length of three hundred and twenty feet as originally laid off, and as shown by the map or diagram in evidence, marked H; the said block being bounded on three of its sides respectively by Common, Lake and Louisiana streets; that the fourth side, to complete the square of four equal sides of the length of three hundred and twenty feet each, form the boundary between block No. 9, owned by the plaintiff, and fractional ten acre lot numbered nine, the property of the defendant. It is further ordered that defendant pay the costs of this suit.